Timothy PARKS, Appellant–Plaintiff,

v.

MADISON COUNTY, et al.,
Appellees–Defendants.

No. 77A04–0106–CV–257.

Court of Appeals of Indiana.

Dec. 31, 2002.

Rehearing Denied March 10, 2003.

714

Timothy Parks, Carlisle, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Donald B. Kite, Sr., Schultz & Pogue, LLP, Carmel, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Timothy Parks, pro se, appeals the denial of his motion to correct error, which challenged the grant of a motion to dismiss in his civil rights action against Madison County, Indiana, Thomas Newman, Scott Mellinger, Wayne Schaffter, Patrick Cunningham, Jr., and David Puckett. Parks presents the following consolidated, restated issues for review:

1. Did the trial court err in determining that Parks's claims were barred by the statute of limitations?

2. Is Ind.Code Ann. § 35–50–6–5(a)(4) constitutional?

3. Did the trial court err in finding that Parks's civil claims were frivolous?
4. Did the trial court err in failing to appoint counsel to represent Parks?

We affirm.

This case comes before us by way of the granting of a motion to dismiss, which was filed pursuant to Ind. Trial Rule 12(B)(6). In such cases, we are bound to accept as true the facts set forth in the plaintiff's complaint. *Vranicar v. Board of Comm'rs of Brown County,* 730 N.E.2d 752 (Ind.Ct. App.2000). We detail those facts below, as well as additional uncontested background facts. On December 20, 1989, Parks was placed on probation after having been convicted of burglary in Madison County, Indiana. On November 24, 1993, a warrant was issued for Parks's arrest alleging that Parks had violated his probation. That warrant was served on Parks on March 20, 1995 while Parks was living in Florida. It was subsequently determined that Parks had violated the conditions of probation, and therefore his probation was revoked.

On December 7, 2000, Parks filed a complaint relating to events that allegedly occurred between November 1993 and March 1995 in connection with the aforementioned revocation proceeding. Parks named as defendants Judge Thomas Newman of the Madison Superior Court, Madison County Deputy Prosecuting Attorney David Puckett, Madison County, Indiana, former Madison County Sheriff Scott Mellinger, Madison County Probation Officer Wayne Schaffter, and attorney Patrick Cunningham. In the complaint, Parks alleged that on November 22, 1993, Deputy Prosecutor Puckett and Judge Newman, although lacking probable cause, conspired to issue a warrant for Parks's arrest on grounds that he had failed to appear as ordered in court. The warrant was served in Florida and Parks was extradited to Indiana. Parks alleged that former sheriff Mellinger knew and concealed the fact that the extradition was improper. Parks further alleged that Judge Newman appointed attorney Patrick Cunningham to represent him, but that Cunningham failed to do so adequately. Finally, he alleged that Puckett and Schaffter were aware that the arrest warrant, the charge of failure to appear, and the extradition were all improper and convinced Cunningham to conceal his knowledge of those improprieties as well.

We note here that this is not the first action initiated by Parks concerning these and related matters. This court affirmed the revocation of Parks's probation in an unpublished memorandum decision. *See Parks v. State,* No. 48A04–9508–CR–293, 657 N.E.2d 207 (Ind.Ct.App. Nov. 20, 1995). Thereafter, Parks filed an action in federal court alleging 42 U.S.C. § 1983 violations. That action was based upon the same operative facts as the previous Indiana action. In it, Parks sought an order expunging the determination that he violated probation, as well as compensatory and punitive damages. Some of the claims asserted by Parks were resolved against him by way of summary judgment. The remaining claims were dismissed without prejudice when Parks "refused to remedy, despite specific guidance and direction from the court on how to" conform his complaint to the guidelines set out in the federal pleading rules. *Appellant's Appendix* at 96 (quoting *Parks v. Lawler, Jr., et al.,* No. IP–95–1231–C (S.D.Ind. Oct. 1, 1997) (*Parks I*)). Still later, Parks filed another action in Sullivan Circuit Court, which was removed to the United States District Court for the Southern District of Indiana. *See Parks v. Madison County, et al.,* No. 00–0031–C–D/F (Ind.Ct.App. Sept. 28, 2000) (*Parks II*). According to the *Parks II* court, that action, which also

advanced a 42 U.S.C. § 1983 claim, was "a mere shadow" of *Parks I*. In granting summary judgment for the defendants, the court held:

> The foregoing demonstrates that Parks' claims accrued no later than upon the March 1995 Madison Circuit Court's order revoking his probation. He had two (2) years following such date in which to file suit pursuant to 42 U.S.C. § 1983. He did not do so . . . .
>
> *Parks I* was deficient with respect to certain claims and was botched by Parks' unwillingness to follow repeated instructions to plead his claims in a simple and proper fashion. This sequel offers nothing of substance, nothing of merit, which could support Parks' recovery. In a ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence of the credibility of witnesses. However, "it is gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983).

*Appellant's Appendix* at 100–01 (quoting *Parks v. Madison County, et al.*, No. 00–0031–C–D/F, slip op. at 7–8).

This brings us to the instant case. Parks filed this complaint in the Sullivan Superior Court on December 7, 2000. This also is a 42 U.S.C. § 1983 claim seeking injunctive relief and money damages based upon the previously described events, which occurred between November 24, 1993 and March 20, 1995. On April 11, 2001, Madison County, Mellinger, and Cunningham (hereinafter "the Madison County Defendants") filed an Ind. Trial Rule 12(B) motion to dismiss on grounds that the action was barred by the statute of limitations. On April 23, 2001, Newman and Puckett filed a motion to dismiss on grounds that they enjoyed absolute judicial and prosecutorial immunity, respectively. In both motions, the defendants requested a ruling that the lawsuit against them was frivolous. The trial court granted both motions on May 18, 2001, and dismissed both actions with prejudice. Moreover, the trial court in both instances ruled that Parks's lawsuit was frivolous. Parks filed a motion to correct errors challenging all aspects of those determinations.

■ We note as an initial matter that Parks's noncompliance with the Indiana Rules of Appellate Procedure subjects his appeal to dismissal on that basis. Rule 44(D) of the Indiana Rules of Appellate Procedure places a thirty-page limit on an appellant's brief. Park's appellant's brief is fifty-six pages long. According to App. R. 44(E), a brief may exceed the prescribed page limit if the party preparing the brief certifies that it does not exceed 14,000 words. We do not find such a certificate in Parks's appellate materials. Further, App. R. 44(D) sets a fifteen-page limit on a reply brief, again unless there is a certification that the reply brief does not exceed, in the case of a reply brief, 7,000 words. Parks's reply brief is twenty-three pages long, and we find no word-count certificate related to it.

■ We note also that the "facts" section of Parks's appellate brief is laced with argument and advocative prose (e.g., "defendants ... continued to misrepresent facts, or kept Parks misinformed, to fraudulently conceal from him harm caused by wrongful confinement and kidnapping through fall of 1998"). *Appellant's Brief* at 3–4. The statement of facts is to be a narrative statement of facts, and is not to be argumentative. App. R. 46(A)(6); *Cur-*

*tis v. Clem*, 689 N.E.2d 1261 (Ind.Ct.App. 1997). Thus, the "facts" section in Parks's brief does not comply with the requirements of App. R. 46.

■ Parks is by now a veteran pro se litigant, and we are left to conclude that he filed his brief in flagrant disregard of the Rules of Appellate Procedure. These deviations from the appellate rules warrant rebriefing or other sanctions. *In re Termination of Parent–Child Relationship Between Children: T.C., C.F. and the Parents: P.C., B.T.D. and B.R.F.*, 630 N.E.2d 1368 (Ind.Ct.App.1994), *trans. denied.* Failure to follow the appellate rules can, in egregious situations, lead to dismissal of the appeal. *Kirchoff v. Selby*, 703 N.E.2d 644 (Ind.1998). We observe, however, that the record of proceedings in this case, as well as Parks's propensity for litigation, give cause to believe that if this matter were dismissed on procedural grounds, it would almost certainly be resurrected by Parks on some other basis and pressed again. *See, e.g., Parks v. Madison County, et al.*, No. 30A05–0109–CV–399, 772 N.E.2d 1038 (Ind.Ct.App. July 12, 2002); *Parks v. City of Anderson, et al.*, No. 77A01–0108–CV–289, 770 N.E.2d 423 (Ind. Ct.App. June 17, 2002). Therefore, in the interest of judicial economy, we will address Parks's claims on the merits.

### 1.

Parks presents several issues concerning the merits of his case. Through those issues, Parks contends that the trial court erred in granting the motion to dismiss filed by the Madison County Defendants. We do not address all of those issues, however, because we conclude that Parks's action was barred by the relevant statute of limitations.

Our well-settled standard of review in matters such as this is as follows:

A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record.

*Town of Plainfield v. Town of Avon*, 757 N.E.2d 705, 709–710 (Ind.Ct.App.2001), *trans. denied* (citations omitted).

As indicated previously, the trial court determined that Parks's claims were barred by the statute of limitations. To review, the claims against the Madison County Defendants were based upon acts that allegedly occurred no later than March 20, 1995. Parks's ensuing civil rights lawsuit was premised upon 42 U.S.C. § 1983. In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the United States Supreme Court determined that, in § 1983 actions, courts should apply the statute of limitations applicable to personal injury lawsuits filed in that state. In Indiana, that period of limitations is two years. *See* Ind.Code Ann. § 34–11–2–4 (West 1999). Parks filed the instant action on December 7, 2000, well after the limitations period had expired. He claims, however, that the limitations period was tolled until late 1998, for the following reasons: "(1) [T]he delayed termination of the 'failure to appear' charge

maliciously prosecuted against Parks; (2) the fraudulent concealment of damages by defendants [sic] misrepresentations through fall, 1998, and; (3) Parks [sic] release from his sentence in criminal cause no. 48D03–8805–CF–071." *Appellant's Brief* at 13. Parks also claims that, even if the filing of the complaint was untimely, the action was saved by the Indiana's Journey Account Statute. We will address these arguments in turn.

With respect to contentions (1), (2), and (3) enumerated above, we understand Parks's argument to be that events subsequent to those set out in the complaint constituted a continuation of the alleged violations of Parks's civil rights, thereby delaying the triggering of the limitation period. This amounts to an invocation of the "continuing wrong" doctrine. This doctrine applies where an entire course of conduct combines to produce an injury. *Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692 (Ind.2000). It is not an equitable doctrine, but instead defines when an act, omission, or neglect took place. *Id.* "When this doctrine attaches, the statute of limitations does not begin to run until the wrongful act ceases, and at that point the plaintiff may bring the claim within the normal statutory period." *Id.* at 699. This does not mean, however, that the plaintiff may sit idly by if he discovers facts that alert him that he has a cause of action. "[T]he doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." *C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 645 (Ind.Ct.App.1999).

Parks also invokes the doctrine of fraudulent concealment, which our supreme court described as follows:

Fraudulent concealment is an equitable doctrine that operates to estop a defendant from asserting the statute of limitations as a bar to a claim whenever the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim. In [*Fager v. Hundt*, 610 N.E.2d 246 (Ind. 1993)], we held that this doctrine "should be available to the plaintiff to estop a defendant from asserting the statute of limitations 'when he has, either by deception or by a violation of duty, concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action.'" [*Id.* at 251]. When this occurs, equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay.

*Doe v. Shults–Lewis Child and Family Serv., Inc.*, 718 N.E.2d 738, 744 (Ind.1999). We stress here that the fraudulent concealment exception does not establish a new date for the commencement of the limitations period, but instead creates an equitable exception under which, after discovering the negligence, the plaintiff is not entitled to a full statutory limitations period within which to act. The critical principle is that the plaintiff must exercise due diligence in commencing the action after the equitable grounds cease to operate as a valid basis for causing delay. *Fager v. Hundt*, 610 N.E.2d 246.

Under both the "continuing wrong" and "fraudulent concealment" doctrines, the critical event for purposes of determining whether an action was timely filed is the plaintiff's discovery of facts that alert him that he has a cause of action. *See Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692; *Fager v. Hundt*, 610 N.E.2d 246. Parks concedes in his brief that he "learned facts in March, 1996 that implied he had been confined and removed

from Florida without legal process authorized by the State of Indiana." *Appellant's Brief* at 4. The alleged facts were central to his complaint. Thus, even if the doctrine of continuing wrong tolled the running of the statute until then, the action was not timely filed. The same result would follow if we were to apply the doctrine of fraudulent concealment, under which Parks would have even less than the two-year period to which he would be entitled under the doctrine of continuing wrong. *See Fager v. Hundt,* 610 N.E.2d 246.

Parks's final argument on the subject of the timeliness of his complaint concerns Indiana's Journeys Account Statute, which provides as follows:

> 1. (a) This section applies if a plaintiff commences an action and the plaintiff fails in the action from any cause except:
>
> (1) negligence in the prosecution of the action;
>
> (2) the action abates or is defeated by the death of a party; or
>
> (3) a judgment is arrested or reversed on appeal.
>
> (b) If subsection (a) applies, a new action may be brought not later than the later of:
>
> (1) three (3) years after the date of the determination under subsection (a); or
>
> (2) the last date an action could have been commenced under the statute of limitations governing the original action; and be considered a continuation of the original action commenced by the plaintiff.

Ind.Code Ann. § 34–11–8–1 (West 1999). The statute serves to resuscitate actions that otherwise would have expired under the applicable statute of limitations. *Cox v. American Aggregates Corp.,* 684 N.E.2d 193 (Ind.1997). Parks is no stranger to the Journeys Account Statute in general,

and this line of argument in particular. In *Parks v. City of Anderson, et al.,* No. 77A01–0108–CV–289, 770 N.E.2d 423, involving a different but related claim, Parks asserted that the Journeys Account Statute protected his state civil rights claim from dismissal for lack of timeliness. We explained the parameters of the Journeys Account Statute's to Parks as follows:

> The Journey's Account Statute, when applicable, serves to resuscitate actions that have otherwise expired under a statute of limitations. It generally permits a party to re-file an action that has been dismissed for a lack of jurisdiction in one forum can be re-filed in the proper forum. The "new" action is then considered a continuation of the original action for purposes of the statute of limitations. The underlying purpose of the Journeys Account Statute is to preserve the right of a diligent suitor to pursue a judgment on the merits. However, the statute does not afford protection to a suitor who commences an action but it fails due to negligence in the prosecution of the action.

*Parks v. City of Anderson, et al.,* No. 77A01–0108–CV–289, slip op. at 7–8.

Parks contends that, pursuant to the Journeys Account Statute, his state-court complaint should not be subject to dismissal because it represents a continuation of claims he timely filed in federal court, and that he has continued to prosecute those claims in a diligent manner. We note that in *Elmore v. Henderson,* 227 F.3d 1009 (7th Cir.2000), the Court of Appeals discussed, for purposes of a statute of limitations, the import and implications of a dismissal without prejudice in a federal district court action. The court enunciated the following rule: "[W]hen a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit, so that if the statute of

limitation has run the dismissal is effectively with prejudice." Parks's argument depends upon the viability of his contention that his inability to pay the filing fee did not amount to negligence in pursuing the claim, within the meaning of I.C. § 34–11–8–1(a)(1).[1] We rejected a similar argument in *Parks v. City of Anderson, et al.,* No. 77A01–0108–CV–289, 770 N.E.2d 423, where we stated,

> Parks contends that his failure to pay a filing fee resulting in dismissal does not constitute negligence in the prosecution of the action. We disagree. Parks was not a diligent suitor within the purview of the Journeys Account Statute. He was denied permission to proceed in forma pauperis in federal court, yet paid no filing fee. Moreover, he failed to timely file a § 1983 complaint in state court within two years of the [complained-of act]. Parks' federal claim failed due to Parks' negligence; accordingly, the Journeys Account Statute does not save his late-filed state complaint.

*Id.,* slip op. at 8–9.

The above-quoted excerpt reflects our conclusion that Parks was negligent in pursuing his claim in federal court in IP98–237–C–B/S because he did not pay a filing fee. In turn, that meant that the statute of limitations for the state action was not tolled during that proceeding by operation of I.C. § 34–11–8–1. The federal action from which the instant state-court case emanates was IP95–1231–C–T/G.

That case was dismissed in federal court because, despite being given several opportunities, Parks failed to file a complaint that complied with the Federal Rules of Civil Procedure. This is an even more compelling case of negligence than was the failure to pay a filing fee. Such negligence prevents Parks from invoking the provisions of the Journeys Account Statute. The trial court did not err in granting the motion to dismiss filed by the Madison County defendants.

2.

Ind.Code Ann. § 35–50–6–5(a)(4) (West, PREMISE through 2002 1st Special Sess.) provides that a person may be deprived of any part of the credit time he has earned "[i]f a court determines that a civil claim brought by the person in a state or an administrative court is frivolous, unreasonable, or groundless." Parks claims that this provision is unconstitutional.

■■■■■ When called upon to determine whether a statute violates the Indiana Constitution, we begin with the understanding that the statute stands before us clothed with the presumption of constitutionality until that is clearly overcome by a contrary showing. *Borgman v. State Farm Ins., Co.,* 713 N.E.2d 851 (Ind.Ct. App.1999), *trans. denied.* The party challenging the statute's constitutionality bears the burden of proof, and we resolve all doubts against that party. *Id.* If a statute may reasonably be interpreted in two ways, "one of which is constitutional and

1. Parks argues:
Parks' claims were recently dismissed without prejudice to refiling and continuance under the Indiana Journey Account Statute in November, 2000, due to a sanction imposed barring proceedings in federal court until Parks can pay a filing fee for a prior unrelated action for 1997, in Case No. 97–8101. Parks did not have sufficient funds to pay fees for Case No. 97–8101, so he had no means to eliminate bar in federal court

and had informed the federal court of the sanction when case was removed to federal court in September, 1998, but federal court did not dismiss the action until November 7, 2000. Parks was never negligent in prosecuting his claims in IP98–1225–C–B/S, where case was dismissed only because he did not have funds to pay fee for prior action to lift bar to federal courts of Seventh Circuit.
*Appellant's Brief* at 20–21.

the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless such is required by the unambiguous language of the statute." *Cooper v. State*, 760 N.E.2d 660, 664 (Ind.Ct.App.2001), *trans. denied.*

Parks identifies the statute's alleged constitutional defects as follows: "[I]t violates equal protection and due process of law, that it is open to arbitrary retaliatory enforcement due to unconstitutional vagueness, and that it is unconstitutionally overbroad to the extent it prohibits, or suppresses, exercise of the First Amendment right to petition." *Appellant's Brief* at 42. Accordingly, we must examine whether the statute is (1) vague or (2) overbroad, or whether it violates constitutional principles of (3) due process or (4) equal protection of the laws, and, finally, (5) whether it violates the First Amendment. We note here that Parks presents his constitutional challenge in general terms, characterizing the alleged deficiencies as violations of "constitutional rights," while invoking specifically only provisions of the Federal Constitution. Lacking any citation to the Indiana Constitution, or to cases indicating a different analysis is called for thereunder, *see, e.g., Klein v. State*, 698 N.E.2d 296 (Ind.1998), we will analyze Parks's claims against only federal constitutional standards. *See Games v. State*, 684 N.E.2d 466 (Ind.1997), *modified on reh'g on other grounds, cert. denied.*

Parks contends that I.C. § 35–50–6–5(a)(4) is vague because it does not define what constitutes a "frivolous, unreasonable, or groundless" lawsuit. Basic due process principles dictate that a law is void for vagueness if its prohibitions are not clearly defined. *Klein v. State*, 698 N.E.2d 296. Also, a statute is void for vagueness if its terms invite arbitrary or discriminatory enforcement. *Id.*

In reviewing the language of I.C. § 35–50–6–5(a)(4), it seems clear that an individual of ordinary intelligence could comprehend that it generally forbids the filing of claims that may be characterized as frivolous, unreasonable, or groundless. We understand, of course, that Parks's quarrel is with the definition of those terms. He contends, in essence, that said determination will be made by a third party (a court), after the fact, using amorphous criteria that cannot be discerned in advance. We agree that the terms in question cannot be defined with mathematical accuracy. Such is not required, however. We need not view the statute and its terms in the abstract when considering whether it is unconstitutionally vague. That is, neither Parks nor this court is at liberty to devise hypothetical situations that might demonstrate vagueness. *Smith v. State*, 727 N.E.2d 763 (Ind.Ct.App.2000). "A statute is void for vagueness only if it is vague as applied to the precise circumstances of the instant case." *Id.* at 766.

Although Parks's argument that the statute might theoretically be applied in an unconstitutionally vague way is not entirely implausible, his case does not approach that hypothetical boundary. Premised upon the same or related facts, Parks has filed multiple lawsuits in both state and federal courts, with those cases traveling back and forth between the trial and appellate court levels. Parks has yet to prevail in any meaningful way. Certainly, this lack of success, by itself, does not necessarily place the lawsuit within the ambit of Ind.Code Ann. § 35–50–6–5. A review of his lawsuits, however, reveals that when a decision is rendered against Parks, he has a penchant for dressing old arguments in new clothes, and then pressing them forward again. In the end, the inevitable decisions subsequently entered against him are rendered on the same or

substantially similar grounds as were previous decisions. I.C. § 35–50–6–5(a)(4) was clearly intended to discourage prisoners from filing repetitive and meritless actions that burden judicial resources. We note that a finding of frivolousness was not entered against Parks after his first unsuccessful bite at the proverbial apple. It was only after he attempted to resurrect previous claims that had essentially already been rejected that the court determined his action was frivolous. This is clearly a scenario that I.C. § 35–50–6–5(a)(4) was intended to address. Under the circumstances of this case, the statute is not void for vagueness.

■ We are aware that there is a possibility that Parks may contemplate future legal endeavors based on these same operative facts. For that reason, we observe that the adjectival phrase "frivolous, unreasonable, or groundless" has been defined in Indiana in a different but related context. Ind.Code Ann. § 34–52–1–1(b)(1) (West, PREMISE through 2002 1st Special Sess.) provides that the court may award attorney's fees to the prevailing party in a civil action if the court finds that the other party brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless. This court defined those terms in the context of attorney's fees as follows:

> For purposes of awarding attorney fees pursuant to Indiana Code section 34–1–32–1, a claim is "frivolous" if it is made primarily to harass or maliciously injure another, if counsel is unable to make a good faith and rational argument on the merits of the claim, or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law. A claim is "unreasonable" if, based upon the totality of the circumstances, including the law and facts known at the

time of filing the claim, no reasonable attorney would consider the claim justified or worthy of litigation. A claim is "groundless" if no facts exist which support the legal claim relied upon and presented by the losing party. Finally, a claim is litigated in "bad faith" if the party presenting the claim is affirmatively operating with furtive design or ill will.

*Fisher v. Estate of Haley,* 695 N.E.2d 1022, 1029 (Ind.Ct.App.1998). Considering the language and purpose of I.C. § 35–50–6–5(a)(4), we conclude that the definitions set out in *Fisher* are applicable as well to those terms as used in I.C. § 35–50–6–5(a)(4). We note that "frivolous" and "unreasonable" are defined partially in terms of what an attorney might know or do. We are aware that Parks is not an attorney. This does not mean, however, that he will be held to a lesser standard. We conclude that the meaning of the relevant terms is sufficiently clear that the statute is not unconstitutionally vague.

■ Parks contends that the statute is overbroad. The overbreadth doctrine is "designed to protect innocent persons from having the legitimate exercise of their constitutionally protected freedoms fall within the ambit of a statute written more broadly than needed to proscribe illegitimate and unprotected conduct." *Matheney v. State,* 688 N.E.2d 883, 905 (Ind.1997), *cert. denied,* 525 U.S. 1148, 119 S.Ct. 1046, 143 L.Ed.2d 53 (1999). The authoritative construction of statutes by state courts controls overbreadth analysis. *Smith v. State,* 727 N.E.2d 763. The pivotal question is whether I.C. § 35–50–6–5(a)(4) "sweeps within its prohibitions a substantial amount of conduct which may not be punished under the First and Fourteenth Amendments." *Smith v. State,* 727 N.E.2d at 767 (quoting *Helton v. State,* 624 N.E.2d 499, 508 (Ind.Ct.App.1993), *trans.*

*denied, cert. denied,* 520 U.S. 1119, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997)).

■■■ I.C. § 35–50–6–5(a)(4) is plainly intended to discourage frivolous lawsuits, not legitimate ones. There is no constitutionally protected right to file a frivolous lawsuit. *See Coleman v. C.I.R.,* 791 F.2d 68 (7th Cir.1986). Moreover, we have already held that the nature and description of the proscribed type of lawsuit is sufficiently clear so as to avoid the statute being struck down under the vagueness doctrine.[2] We conclude that because the statute proscribes conduct that is not constitutionally protected, and does so in such a way that it does not include within its ambit conduct protected by the First Amendment, I.C. § 35–50–6–5(a)(4) is not constitutionally overbroad. It follows also that the statute is not addressed to First Amendment speech, and therefore is not constitutionally infirm on that basis.

■■■ Parks contends that the statute violates his right to due process. Substantive due process under the Constitution prohibits state action that deprives one of life, liberty, or property without a rational basis for the deprivation. *Teer v. State,* 738 N.E.2d 283 (Ind.Ct.App.2000), *trans. denied.* We begin our analysis by determining whether a fundamental right is affected. In the instant case, that question is well settled: there is no fundamental right to good-time credit. *See White v. Indiana Parole Bd.,* 713 N.E.2d 327 (Ind.

Ct.App.1999), *trans. denied* Where, as here, no fundamental right is implicated, the State will prevail upon a showing that the law bears a rational relationship to a legitimate state interest. *Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *Mitchell v. State,* 659 N.E.2d 112 (Ind.1995).

We have observed that the purpose of I.C. § 35–50–6–5(a)(4) is to discourage meritless and frivolous lawsuits. The legitimate state interest advanced thereby is the preservation of valuable judicial and administrative resources. A prisoner-appellant's ability and inclination to file civil lawsuits against authorities in the criminal justice system might go unchecked if not for a provision such as I.C. § 35–50–6–5(a)(4), which provides a disincentive for filing lawsuits that fit the description set out previously in this opinion. Parks's arguments themselves reflect that the sanction of loss of credit-time bears a rational relationship to the interest of conserving judicial and administrative resources: viz., "prisoners who lack professional skills, or advice, of legal counsel to ascertain merits of other potentially valid claims are coerced by threat of possible further punishment to forego filing of other claims to avoid [the] risk [of losing credit time]." *Appellant's Brief* at 50. It seems to us that Parks has it about right, although we would rephrase it as, "prisoners who are ill-equipped to competently evaluate the le-

---

2. We reiterate here that, as before, Parks's argument on this point may be understood to include a plea for leeway on behalf of pro se appellants who may not be able to distinguish meritorious lawsuits from frivolous ones. Indeed, because they do not have the benefit of formal legal training, it is not surprising that a mistaken assessment regarding that question might occur. Were there no cost to society for such frivolous suits, there would be no need to discourage them. There is, however, a substantial cost. Meritless law-

suits consume valuable judicial, administrative, and law enforcement resources in the same measure and manner as do their counterparts that have some merit. I.C. § 35–50–6–5(a)(4) is intended to help preserve those resources by apprising incarcerated, pro se appellants that there is a possible down-side to the decision to litigate. The statute reflects the reality that such determinations are of a kind that someone with formal legal training is better equipped to make.

gal merits of their claim are discouraged from filing frivolous lawsuits." This provision is rationally related to the goal of preserving public resources, and therefore does not contravene federal due process.

 Finally, Parks contends that I.C. § 35–50–6–5(a)(4) violates the Equal Protection Clause of the Constitution. Our first task in assessing a claim under the Equal Protection Clause, is to determine the applicable level of scrutiny. *Shepler v. State*, 758 N.E.2d 966 (Ind.Ct.App. 2001), *trans. denied*. If a statute involves a suspect classification or burdens the exercise of fundamental rights, we apply the strictest scrutiny. *Id.* If, on the other hand, the statute does not involve a suspect class or a fundamental right, we review under a rational-basis standard. *State v. Alcorn*, 638 N.E.2d 1242 (Ind. 1994). A statute can survive scrutiny under the latter standard if the classification in the statute bears some rational relationship to a legitimate governmental goal. *Shepler v. State*, 758 N.E.2d 966.

Parks does not argue that incarcerated individuals comprise a suspect class, and we have already observed that there is no fundamental right to credit time. *See White v. Indiana Parole Bd.*, 713 N.E.2d 327. Therefore, the State need only show that the statute bears a rational relationship to a legitimate state interest. *Shepler v. State*, 758 N.E.2d 966. In this particular case, the equal protection analysis is substantially the same as the substantive due process analysis, which we have already resolved against Parks. That is, the sanction of loss of credit-time discourages prisoners from filing meritless and frivolous claims, which in turn bears a rational relationship to the legitimate public interest in conserving valuable judicial and administrative resources. I.C. § 35–50–6–5(a)(4) does not violate the Equal Protec-

tion Clause. Summarizing more broadly, we hold that I.C. § 35–50–6–5(a)(4) passes constitutional muster.

3.

 Parks contends that the trial court erred in finding that his civil claims were frivolous.

 We have previously held that the definition of "frivolous" in this context is the same as the definition of those terms as used in I.C. § 34–52–1–1(b)(1). To review, a claim is frivolous if it is made primarily to harass or maliciously injure another, if the proponent is not able to make a good-faith and rational argument on the merits of the claim, or if the proponent cannot support the action by a good-faith and rational argument for extension, modification, or reversal of existing law. A claim is "unreasonable" if, considering the totality of the circumstances, no reasonable attorney would consider the claim justified or worthy of litigation. A claim is "groundless" if there are no facts that support the legal claim relied upon. Finally, a claim is litigated in "bad faith" if the party presenting the claim is affirmatively operating with furtive design or ill will. Because of the similarity in terminology between the two statutes, we will review a determination of frivolousness under I.C. § 35–50–6–5(a)(4) pursuant to the same standard that we employ with claims arising under I.C. § 34–52–1–1(b)(1). See *cf. Scott v. Randle*, 736 N.E.2d 308 (Ind.Ct. App.2000) (reviewing that aspect of an award of attorney fees under I.C. § 34–52–1–1 on grounds that the lawsuit was frivolous).

Among other things, Parks asserts claims against Newman and Puckett personally for actions they undertook while acting as judge and prosecutor, respectively. Because we have resolved the relevant issues against Parks on other grounds, we

have not addressed the issue of whether they were immune from personal liability for the actions of which Parks complains. We are hard-pressed, however, to conceive of a situation in which the applicability of judicial and prosecutorial immunity, respectively, could be clearer than it is here. Indeed, this should come as no surprise to Parks, inasmuch as the District Court for the Southern District of Indiana so held in *Parks II*:

> Claims for damages against defendants Newman and Puckett in their official capacities are barred by Indiana's Eleventh Amendment immunity. The claims against these defendants in their individual capacities are equally flawed. Thus, the claims for damages against defendant Puckett are barred by this defendant's prosecutorial immunity, which Parks' claims do not overcome, and the claims against Newman in his individual capacity are barred because the acts attributed to Judge Newman, even if detrimental to Parks and even if thought by Parks to have been incorrect, were judicial acts and not taken in the clear absence of all jurisdiction.

*Appellant's Appendix* at 97–98 (quoting *Parks v. Madison County, et al.*, No. 00–0031–C–D/F, slip op. at 4–5) (citations omitted). Although aware of that ruling, Parks continues his efforts to discover a way to hold Newman and Puckett liable to him. His efforts have produced little more than a series of essentially identical lawsuits, each failing for the same reasons that the previous ones did. In fact, it is the repetitive aspect of Parks's legal efforts, with respect to both the nature of his

arguments and the adjudications against him that renders them frivolous. We agree with the trial court that, in view of the fact that when Parks submits the same arguments for the second, third, or fourth time, after those arguments have been repeatedly rejected by courts, his motivation for filing the suit in the first place was primarily to harass the defendants. The trial court did not err in finding that Parks's claims were frivolous.

### 4.

When Parks filed his action in December, 2000, he sought permission to proceed as a pauper and for waiver of the filing fee. The trial court granted the motion for waiver of the filing fee. Parks contends that the court thereafter committed reversible error in failing to sua sponte appoint counsel.

Although we cannot locate a finding entered by the court to the effect that Parks was indigent, such may be inferred from the granting of the request for fee waiver. Pursuant to the version of Ind. Code Ann. § 34–10–1–2 then in effect,[3] which provided that when a court determines that a person who has filed an application to proceed as an indigent and who does not have sufficient means to prosecute or defend the action, the court shall: "(1) admit the applicant to prosecute or defend as an indigent person; and (2) assign an attorney to defend or prosecute the cause." In *Sholes v. Sholes*, 760 N.E.2d 156, 160–61 (Ind.2001) the court held that if an applicant is indigent and without " 'sufficient means to prosecute or

---

**3.** We note that the relevant portion of the statute has since been amended and now states, "(b) If the court is satisfied that a person who makes an application described in section 1 of this chapter does not have sufficient means to prosecute or defend the action, the court: (1) shall admit the appli-

cant to prosecute or defend as an indigent person; and (2) *may, under exceptional circumstances*, assign an attorney to defend or prosecute the cause." I.C. § 34–10–1–2 (West, PREMISE through 2002 1st Special Sess.), as amended by P.L. 125–2002, SEC 1 (emphasis supplied).

defend' the action, it must sua sponte appoint counsel." *Sholes v. Sholes*, 760 N.E.2d 156, 160–61 (Ind.2001). The court indicated, however, that the determination whether to appoint counsel did not end with a finding of indigency. Even after finding that a defendant is indigent, the trial court must further determine whether the defendant "has a colorable bona fide dispute over issues warranting the expense of counsel." *Id.* at 166. The court articulated the following rationale for examining the merits of the claim before appointing counsel: "Although most lawsuits represent genuine disputes, some litigants present wholly frivolous cases. Others pursue cases where the amount of money or principles of law are insignificant. Courts are occasionally presented with vendettas and simple sporting exercises. Public funding of counsel in those cases is a waste of public funds." *Id.* at 166.

We are persuaded that even a cursory reading of *Sholes* vindicates the trial court's ruling here. The trial court determined that Parks's claims were without merit, and further, were frivolous. An appointment of counsel to represent Parks in those matters would have been, in the words of our supreme court, "a waste of public funds." *Id.* The trial court did not err in declining to appoint counsel to represent Parks in this, the latest, and hopefully final, reincarnation of his lawsuit against these defendants.

Judgment affirmed.

NAJAM, J., and SHARPNACK, J., concur.