LOREN COOPER, BRENDA COOPER, BRADY COOPER, JENNA COOPER, BRANSON COOPER, CARLY COOPER, KEATON COOPER and MAKENNA COOPER, Appellants-Plaintiffs,
v.
TOWN OF VAN BUREN, Appellee-Defendant.
No. 27A04-0608-CV-456
Court of Appeals of Indiana.
January 5, 2007
R. DAVID BOYER, II, Boyer & Boyer, Fort Wayne, Indiana, ATTORNEYFOR APPELLANTS.
KENNETH COLLIER-MAGAR, Collier-Magar & Roberts, P.C., Indianapolis, Indiana, ATTORNEY FOR APPELLEE.

MEMORANDUM DECISION
BAILEY, Judge.

Case Summary
Plaintiff-Appellants Loren, Brenda, Brady, Jenna, Branson, Carly, Keaton, and Makenna Cooper ("Coopers"), appeal the trial court's grant of the Appellee-Defendant Town of Van Buren's ("Town") Motion for Summary Judgment upon the Coopers' tort claim. We affirm.

Issue
The Coopers raise two issues on appeal. The Town raises a third issue, which we consider to be dispositive: whether the Coopers timely filed their Notice of Tort Claim.[1]

Facts and Procedural History
The Coopers lived on West Main Street in Van Buren from 1996 to 2002. The Coopers sent a two-page "Notice of Claim against the Town of Van Buren" ("Notice") on November 9, 2001. Appellee's Supplemental Appendix at 20. In the Notice, the Coopers made the following assertions:
On or about June 1, 2000, the Town installed a new water line. Shortly thereafter, the Coopers' basement began flooding. The Town denied the problem was caused by the new line. The basement was continually flooded for 13 months. The Town continued to deny the problem and looked for another source of the water. In looking, they broke several drains and did not fix them. Finally, on June 22, 2001, the Coopers hired Roto Rooter who discovered a possible broken drain in the trenchline where the Town had installed the water line. The Town finally excavated and fixed that broken drain on June 25, 2001, which was the date of discovery.
. . . .
. . . [T]he family was subjected to undue physical, emotional and financial stresses including but not limited to medical bills, testing of mold, cleaning of mold, pain and suffering, humiliation, embarrassment, possible permanent injury, legal fees and 18 months of time spent trying to resolve the problem.
Id. at 1, 2 (emphases added). On May 13, 2003, the Coopers filed their Complaint against the Town.
The Town moved for summary judgment, arguing that the Coopers had failed to timely file a notice of tort claim, and that the Coopers had failed to establish a genuine issue as to material fact that the Town had proximately caused the damage to the Coopers' basement. In opposing the Town's motion, the Coopers filed Brenda's affidavit, in which she testified that the Town "install[ed] a water line through our yard in late 2000 and early 2001." Appellant's Appendix, Affidavit of Brenda Cooper at 1 (emphasis added).[2] She further asserted that "[s]ometime after the installation of the water line by the Town of Van Buren, my basement began flooding from the floor drains and cracks and the walls on a daily basis. My sump pump ran approximately every 10-15 minutes, rain or shine, around the clock." Id. Prior to the Town's installation of the water line, the basement had flooded only twice; in 1996 due to a mechanical failure and in 1998 when the town was flooded.
In deposition and now on appeal, the Coopers assert that they "did not keep records of events during the process and relied on the Town of Van Buren for dates." Appellant's Reply Brief at 8. In her deposition, Brenda described the Coopers' reliance on statements of Jim Webb, the Town's Utilities Superintendent, for the dates included in their Notice.
[T]he date that I refer to in the Tort Claim was from the conversation that my husband and I and Jim Webb had in our backyard. In April of 2001, I don't know the exact date. I just know it was April because [my husband] had mentioned that it had been going on for a while and Jim had said, "10 months." So, we backed up from April, 10 months, and that's how I came up with June of 2000.
App., August, 2004 Deposition of Brenda Cooper at 19. Later in her deposition, the Town's attorney questioned Brenda regarding a "Journal of Dates," which she had prepared. Id. at 252. The Journal read as follows:
10-30-00 Ran our line (When did they dig it?)
. . . .
11-1-00 Line done? Or 11-15-01?[3]
Coopers Complain
3-26-01 Changed our water meter
Id. As with the description of dates in her Notice, however, Brenda testified that she was just summarizing information that she had received from Webb.
Brenda admitted to knowing of a "problem in the Spring of 2001," and having water in her house prior to June 25, 2001. App., Affidavit at 1, and Depo. at 34, 35. Further, she acknowledged that she asked the Town, prior to June 25, 2001, whether it was responsible for her leak. Meanwhile, in a letter, Webb indicated that the installation occurred from September 1, 2000 to October 20, 2000.
The trial court granted the Town's Motion for Summary Judgment on proximate cause grounds. The Coopers now appeal.

Discussion and Decision

I. Standard of Review
When reviewing summary judgment, our standard of review is well settled.
[T]his court views the same matters and issues that were before the trial court and follows the same process. We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.
Swami v. Lee, 841 N.E.2d 1173, 1176 (Ind. Ct. App. 2006) (citations omitted), trans. denied. This Court shall affirm an order for summary judgment where sustainable on any legal theory or basis in the record. Indiana Dep't of Envtl. Mgmt. v. Lake County Solid Waste Mgmt. Dist., 847 N.E.2d 974, 983 (Ind. Ct. App. 2006).

II. Analysis
On appeal, the Town argues that the Coopers failed to file their Notice of Tort Claim within the required time. In response, the Coopers contend that they did not discover that the Town was responsible until June 25, 2001, and therefore, their claim did not accrue until that time. The parties agree that the Coopers filed their Notice on November 9, 2001.
The Indiana Tort Claim Act is the mechanism for making tort claims against governmental entities. A claim against a political subdivision is barred unless notice is filed with the governing body of the political subdivision within 180 days after the loss occurs. Ind. Code § 34-13-3-8. The notice must be in writing and must be delivered in person or by registered or certified mail. I.C. § 34-13-3-12.[4]
The purpose of the statute is to provide a political subdivision notice of the circumstances so that the political subdivision may investigate, determine liability and prepare a defense to the claim. Daugherty v. Dearborn County, 827 N.E.2d 34, 36 (Ind. Ct. App. 2005) (citation omitted), trans. denied. On review, we liberally apply the statute in order to avoid denying plaintiffs an opportunity to bring a claim where the purpose of the statute has been satisfied. Id. (citation omitted). Not all technical violations of this statute are fatal to a claim. Id. (citation omitted).
This Court has applied the discovery rule to claims filed pursuant to the Tort Claim Act. Garnelis v. Indiana Dep't of Health, 806 N.E.2d 365 (Ind. Ct. App. 2004). In Garnelis, one of the plaintiffs was allegedly misdiagnosed as being HIV positive. A second physician concluded that the plaintiff was not HIV positive. In holding that the second physician's opinion started the clock, the Garnelis Court concluded that the cause of action "accrues and the statute of limitations begins to run 'when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another.'" Id. at 371 (quoting Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992)). Accordingly, in considering those factual assertions in the record most favorable to the Coopers, we inquire whether they knew, or in the exercise of ordinary diligence, could have discovered prior to May 13, 2000 (180 days prior to November 9, 2001) that their basement was flooding as a result of the tortious act of another.
On appeal, the Coopers argue "[neither] the Coopers nor the Town knew until June 25, 2001 the reason for water intrusion into the basement." Reply Br. at 8 (emphasis added). Even taken as true, this event did not constitute accrual of the claim. In deposition, Brenda admitted to knowing of the problem, and communicating with the Town about whether the problem was its faultprior to June 25, 2001. This Court has held that the cause of action accrues upon discovery of the injury, not upon accumulating support of the claim. In Perryman v. Motorist Mut. Ins. Co., 846 N.E.2d 683 (Ind. Ct. App. 2006), Perryman argued that his cause of action did not begin to accrue until he learned of a relevant decision by our Supreme Court. The Perryman Court held that "application of the discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred." Id. at 689.
Prior to the incident, the Coopers' basement had flooded only twice, once when the entire town was flooded and once due to a mechanical failure. Sometime after the installation of the water line, the basement began flooding from the floor drains, cracks, and walls on a daily basis, with the sump pump running approximately every ten to fifteen minutes, rain or shine, around the clock. Therefore, at some point, the basement went from dry to flooded. It is clear that the Coopers noticed.
Brenda referred to the installation occurring "in late 2000 and early 2001," and admitted knowing of a "problem in the Spring of 2001." App., Affidavit at 1. We note that these terms are ambiguous. Certain other of their statements, however, lead to the reasonable inference that they discovered the problem prior to May 13, 2001. In their Notice, they indicated that the Town installed the water line "[o]n or about June 1, 2000," and that they had "spent eighteen months trying to resolve the problem." Supp. App. at 1, 2. The Coopers claim that they did not keep track of dates and that they relied on the Town for the proposition that the installation occurred in June of 2000. Nonetheless, they would have had independent knowledge of the fact that they had spent eighteen months, or some considerable time, dealing with a flooded basement.
Significantly, Brenda acknowledged meeting with her husband and the Town in April of 2000 to discuss the problem. Her husband remarked that "it had been going on for a while," even then. App., Depo. at 19. That discussion, including communication about how long the problem had been occurring, was before May 13, 2001, and therefore occurred more than 180 days prior to the filing of their Notice.
The Coopers argue that they "had continual water intrusion and therefore loss into their home until all the drains were fixed in the autumn of 2002." Reply Br. at 8. Essentially, the Coopers claim that the Town's actions constituted a continuing wrong, suggesting that an entire course of conduct produced their injury. This alleged fact, however, does not preserve the Coopers' claims. "[T]he doctrine of continuing wrong will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts which should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." Parks v. Madison County, 783 N.E.2d 711, 719 (Ind. Ct. App. 2002) (quoting C & E Corp. v. Ramco Indus., Inc., 717 N.E.2d 642, 645 (Ind. Ct. App. 1999)), trans. denied.
Finally, the Coopers argue that the Town's actual notice of the problem absolved their duty to file a Notice. The statute, however, makes no such provision. Further, this Court has declined to allow a political subdivision's actual notice of an injury to free a plaintiff of the duty to communicate its allegations in writing. Daugherty, 827 N.E.2d at 36 ("[A]ctual knowledge or routine investigation of the flood did not relieve Daugherty of his duty to give notice that he intended to hold the County liable.").
We conclude that the Coopers' own statements support the reasonable inference that their claims accrued more than 180 days prior to their filing a Notice of Tort Claim.

Conclusion
For the foregoing reasons, the trial court appropriately granted the Town's Motion for Summary Judgment.
Affirmed.
VAIDIK, J., and BARNES, J., concur.
NOTES
[1] The trial court entered Summary Judgment for the Town, finding that the Coopers "failed to demonstrate any evidence in the record which shows that the conduct by the defendant was the proximate cause leading to the intrusion of water into the plaintiffs' basement." Appellee's Supplemental Appendix at 5. Concluding the timeliness of the Coopers' Notice of Tort Claim to be dispositive, we decline to address the merits of the trial court's ruling on proximate causation.
[2] The Appellant's Appendix does not comply with Ind. Appellate Rules 50(A)(2)(b), (f) or 51(B), (C). Accordingly, our citations to the Appellant's Appendix reference the page numbers of the particular document, rather than the appendix.
[3] Based upon the context of this entry, the reference to 2001 in "11-15-01" appears to be a typographic error.
[4] While it is not clear whether the Notice was sent by certified mail, the Town has not raised that as an issue.