**Eric D. SMITH, Appellant–Plaintiff,**

v.

**INDIANA DEPARTMENT OF CORRECTION, et al, Appellee–Defendants.**

No. 49A02–0706–CV–477.

Court of Appeals of Indiana.

March 11, 2008.

Eric D. Smith, Westville, IN, pro se.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

### OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Eric D. Smith, *pro se*, appeals the trial court's grant of the motion for summary judgment made by the Indiana Department of Correction and Westville Control Unit in his action seeking injunctive and declaratory relief.

We dismiss.

### FACTS

In August of 2001, a jury convicted Smith of having committed nine counts of arson, all as class B felonies, when he set a fire that destroyed twelve occupied apartment units. He was sentenced to a term of twenty years. He appealed, and we affirmed his conviction. *See Smith v. State,*

779 N.E.2d 978 (Ind.Ct.App. Nov, 2002), *trans. denied.* He sought post-conviction relief, which was denied; and we affirmed the denial. *See Smith v. State,* 49A05–0409–PC–495, 846 N.E.2d 373 (Ind.Ct.App. Apr. 13, 2006).

Smith then embarked on a course of lawsuits that led to numerous appeals addressed by this court. *See Smith v. Dep't of Corr.,* No. 49A05–0603–CV–113, 853 N.E.2d 551 (Ind.Ct.App. Aug.21, 2006) (appealing judgment on the evidence against him on his claim alleging that "painful odor" at facility violated his constitutional rights), *trans. denied; Smith v. Huckins et al,* 850 N.E.2d 480 (Ind.Ct.App.2006) (appealing dismissal pursuant to Ind.Code § 34–58–1–1 of his claim alleging facility employees violated his right to free speech and access to courts), *trans. denied; Smith v. Maximum Control Facility et al,* 850 N.E.2d 476 (Ind.Ct.App.2006) (appealing dismissal of claim pursuant to statute of his complaint alleging denial of access to public records); *Smith v. McKee et al,* 850 N.E.2d 471 (Ind.Ct.App.2006) (appealing dismissal pursuant to statute of his claim alleging acts of retaliation and excessive force); *Smith v. Carrasco et al,* 850 N.E.2d 468 (Ind.Ct.App.2006) (appealing dismissal pursuant to statute of his claim alleging that his writing of papers on anarchy was unconstitutionally prohibited); *Smith v. Indiana Dep't of Corr. et al,* 853 N.E.2d 127 (Ind.Ct.App.2006) (appealing dismissal pursuant to statute of his claim alleging use of excessive force after he tied sheets to form a hammock and suspended himself from pipes twenty feet in the air, refusing to descend until his demands that papers be copied were met), *transmitted on transfer; Smith v. Wal–Mart Stores East LP,* 853 N.E.2d 478 (Ind.Ct.App. 2006) (appealing grant of Wal–Mart's motion to dismiss Smith's 2005 claim alleging that Wal–Mart was violating his constitutional rights and was negligent in failing to produce evidence regarding 2001 sales), *trans. denied; Smith v. Indiana Dep't of Corr. et al,* 861 N.E.2d 1271 (Ind.Ct.App. 2007) (appealing denial of a preliminary injunction in the instant action); *Smith v. Harris,* 861 N.E.2d 384 (Ind.Ct.App.2007) (appealing denial of dismissal for failure to prosecute his claim alleging unconstitutional refusal to copy documents requested by Smith), *trans. denied; Smith v. State,* No. 49A05–0611–PC–628, 867 N.E.2d 286 (Ind. Ct.App. May 22, 2007) (appealing denial of motion to correct erroneous sentence); *Smith v. State,* No. 41A04–0608–CV–441, 868 N.E.2d 1216 (Ind. Ct.App. June 26, 2007) (appealing denial of motion to expunge record of 2000 arrest); *Smith v. Indiana Dep't of Corr. et al,* 871 N.E.2d 975 (Ind.Ct.App.2007) (appealing judgment for facility on Smith's claim alleging disciplinary methods constituted negligence and constitutional violations), *trans. denied;* and *Smith v. State,* 873 N.E.2d 197 (Ind.Ct.App.2007) (appealing summary judgment for facility on Smith's claim alleging violation of right to access records), *transmitted on transfer.* According to our docket, Smith also currently has pending six new matters awaiting action.

The appeal before us concerns a complaint filed by Smith on August 11, 2005, against the Department of Correction and its Westville Control Unit ("the Unit," and collectively, "DOC"). Smith sought injunctive and declaratory relief as to his treatment in segregated confinement in the Unit. DOC filed an answer, admitting that Smith had been "confined in segregation" in the Unit since April of 2004 but denying the rest of his factual allegations. (App.35). On December 2, 2005, Smith filed a motion to amend his complaint, adding *inter alia* a claim that his treatment violated the Universal Declaration of Human Rights. In January of 2006, the trial court granted his motion to amend.

The amended complaint makes 224 paragraphs of factual allegations to the effect that the Unit is a grim place to be and that Smith suffers greatly there. Smith's complaint then asks the trial court to declare that prisoners in the Unit "be allowed to participate in educational programs, to possess hardcover books, tape and cassette players"; be allowed "legitimate physical and real outside recreation, and contact visits"; be "allowed to possess all their clothing" and "be allotted enough clean clothing and under garments for each day of the week"; "be allowed to order food off of commissary"; have "access to every legal paper or legal book within the main law library"; and be given televisions, radios and batteries. (App.303, 304, 305, 309). He further asked the trial court to declare that DOC "must provide prisoners ... helpful and resourceful legal assistance"; declare that the Unit "be closed down and barred forever from use"; and enjoin the DOC from operating "any facility" like the Unit. (App.308, 311, 312). DOC filed another answer, again denying most of Smith's allegations.

On June 5, 2006, Smith filed a motion for summary judgment[1] and his 99–page affidavit in support. He subsequently submitted an affidavit of "additional facts." (App.585). On June 26, 2006, the trial court set a hearing on Smith's motion. On August 15, 2006, Smith filed notice with the trial court stating that on August 1, 2006, he was transferred from the Unit to the New Castle Correction Facility and placed in a mental health unit on suicide watch. On August 31, 2006, DOC filed its response in opposition to Smith's motion for summary judgment and its motion for summary judgment. In both, DOC argued that the trial court lacked jurisdiction over claims asserting a violation of the Universal Declaration of Human Rights; that Smith's claims for injunctive relief were moot inasmuch as he had been transferred from the Unit; and that DOC was not a proper party for declaratory judgment.[2]

On September 11, Smith filed another affidavit in support of his motion for summary judgment, stating his belief that his transfer to the New Castle DOC facility on August 1, 2006, was effected by DOC "to escape jurisdiction of" the trial court and "to prejudice [him] in other court filings and cases."[3] (App.737). Smith also filed a motion to again amend his complaint; specifically, to name "proper defendants" amenable to an order of declaratory judgment. (App.752). On November 2, 2006, Smith filed another affidavit of "additional facts" with the trial court, advising that he was then at the Indiana State Prison in Michigan City. (App.767, 768).

On February 26, 2007, the trial court convened a hearing on both Smith's and DOC's pending motions for summary judgment and other various motions filed by Smith. Smith acknowledged that at that time, he was not in the Unit but at a DOC facility in Pendleton.[4] On April 5, 2007,

---

1. His motion states that a memorandum in support was filed therewith; however, the CCS does not reflect such a filing, and the one provided in Smith's Appendix is not file-marked.

2. Smith asserts that he filed a response to DOC's motion for summary judgment. There is no such filing reflected in the CCS, and the material so designated in his Appendix is not file-marked.

3. In the September 16, 2005, affidavit filed in this matter, Smith stated that he had "a lot of civil and criminal suits filed," with "about twelve (12) active in court, and [planned] on filing at least six (6) more actions in the court." (App.44).

4. He testified that he had been "shipped to New Castle for evaluation and they sent me to Michigan City. And then Michigan City sent me here." (Tr. 9). He testified that he expected to be transferred "back to MCC be-

the trial court granted summary judgment to DOC. The trial court found that it did not have jurisdiction over his claim for violation of the Universal Declaration of Human Rights; that his claim for injunctive relief was moot based upon his transfer from the Unit; and that DOC was not subject to declaratory judgment. The trial court's order also denied Smith's motion to amend his complaint "more than a year after the filing of" his amended complaint. (App.24).

## DECISION

Smith's brief argues that the trial court "erred when it dismissed the Amended Complaint." Smith's Br. at 4. We note that the trial court did not dismiss his complaint; it granted judgment to DOC. Smith's specific arguments are as follows: (1) the trial court should have allowed him to again amend his complaint because, as a *pro se* litigant, he should be given special latitude; (2) his claims for injunctive relief are not moot because his transfer from WCU was only temporary, and he had filed notice with the trial court on March 21, 2007, that he was again in WCU; (3) Indiana's Declaratory Judgment statute cannot bar judgment against DOC for declaratory relief based on his claims alleging the violation of his federal constitutional rights; and (4) based on the right to due course of law pursuant to the Indiana constitution, Indiana courts must have jurisdiction to apply the Universal Declaration of Human Rights.

DOC argues that as a matter of law, Smith's various arguments must fail. It further urges that in the event we find that there is a genuine issue of material fact so as to warrant the reverse of summary judgment for further proceedings, we direct the trial court to conduct appropriate screening under Indiana Code Title 34, Article 58. We find the latter matter to be dispositive.

Pursuant to Indiana Code section 34–58–1–1, "[u]pon receipt of a complaint filed by an offender" after June 30, 2004, "the court shall docket the case and take no further action until the court has conducted the review required by Section 2 of this chapter." [5] This statute "contemplates that the trial court conducts a *sua sponte* review of an offender's complaint or petition promptly upon filing." *Smith*, 853 N.E.2d at 132. After this review, the trial court

(a) shall determine if the claim may proceed. A claim may not proceed if the court determines that the claim:

(1) is frivolous;

(2) is not a claim upon which relief may be granted; or

(3) seeks monetary relief from a defendant who is immune from liability for such relief.

(b) A claim is frivolous under subsection (a)(1) if the claim

(1) is made primarily to harass a person; or

(2) lacks an arguable basis, either in

(A) law; or

(B) fact.

I.C. § 34–58–1–2.

It is unclear whether the trial court conducted this review. We have previously noted that meritless lawsuits filed by offenders inflict a "cost to society," by consuming "valuable judicial, administra-

---

cause [he] still ha[d] long term segregation time that [he] ha[d] to fulfill." *Id.*

**5.** Interestingly, according to the annotated Indiana Code, all cases in which this procedure has been applied involve Smith. *See* Ind.Code Ann. § 34–58–2 *et seq.* (West 2007).

tive, and law enforcement resources." *Smith*, 853 N.E.2d at 138 (citing *Parks v. Madison County*, 783 N.E.2d 711, 724 n. 2 (Ind.Ct.App.2002), *trans. denied* ). Bearing such cost in mind, we find no impediment to our ability to now apply the statute to Smith's current action.

Initially, we make several observations. Smith was convicted of serious criminal offenses. He exercised his right to a direct appeal; his convictions were affirmed. He filed a petition for post-conviction relief, which petition was denied by the trial court, and that denial was affirmed on appeal. Smith then proceeded to initiate litigation challenging in various forms the circumstances in which he finds himself as a result of his convictions. As we have advised Smith in the past, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Smith*, 853 N.E.2d at 136. Further, DOC is required to "adopt rules for the maintenance of order and discipline." I.C. § 11–11–5–2. Smith acknowledges that he has violated DOC rules,[6] which violations resulted in his segregation in the Unit, and he offers no authority for his multiple assertions that a prisoner who has been segregated based upon his own unacceptable conduct is entitled to the various amenities he seeks. In applying the above statute, we decline to address at length Smith's multiple factual allegations of mistreatment and his arguments as to how said facts constitute violations of federal and state constitutional rights, or his misguided legal theories as to the application of the Universal Declaration of Human Rights and the Declaratory Judgment act,

and we summarily find that Smith's complaint should be dismissed as one which is both frivolous and not a claim upon which relief may be granted.

We also find that there is another basis for dismissing Smith's complaint. The legislature enacted a limitation on the filing of civil actions by offenders, found in Chapter 2 of Article 58. Specifically, the provision states that

> [i]f an offender has filed at least three (3) civil actions in which a state court has dismissed the action or a claim under IC 34–58–1–2, the offender may not file a new complaint or petition unless a court determines that the offender is in immediate danger of serious bodily injury (as defined in IC 35–41–1–25).

I.C. § 34–58–2–1. It appears that this provision was first applied to Smith in our opinion of July 13, 2006. *Smith*, 850 N.E.2d at 485. Therein, we held that Smith could not "file a new complaint or petition unless a court determines that he is in immediate danger of serious bodily injury." *Id.* Smith had filed this complaint nearly a year before that holding. However, we find that like the other statutory limitation on offender litigation discussed in *Parks*, the limitation in Chapter 2 "is intended to help preserve" valuable judicial, administrative, and law enforcement resources. 783 N.E.2d at 724 n. 2. Consistent with that intent, and based upon the volume of Smith's legal matters pending at the time of the July 2006 *Smith* holding, we find that Indiana Code § 34–58–2–1 shall apply to the instant complaint and to any other of Smith's cases. Further, we find nothing in the statute that prohibits our making the determination it requires. We find that Smith's complaint does not

---

**6.** In our decision affirming the trial court's denial of preliminary injunction in this case, we noted that Smith's evidence included records of his "admi[ssion] he was guilty of at least twenty-five" incidents that resulted in "conduct reports." *Smith*, 861 N.E.2d at 1274 n. 1.

reflect that he "is in immediate danger of serious bodily injury." *Id.* Accordingly, his complaint should be dismissed.[7]

Dismissed.

BAKER, C.J., and BRADFORD, J., concur.

---

7. Given the extraordinary expenditure of public resources in addressing litigation filed by Smith, and to avoid such unnecessary and unwarranted costs to society in similar matters in the future, we direct trial courts to review and consider the application of Indiana Code 34, Article 58 before permitting actions by incarcerated offenders to proceed.