### TOWN OF PLAINFIELD, Appellant–Plaintiff,

v.

### TOWN OF AVON, Appellee–Defendant.

No. 32A01–0107–CV–266.

Court of Appeals of Indiana.

Nov. 6, 2001.

---

Melvin R. Daniel, James P. Moloy, Dann, Pecar, Newman & Kleiman, Indianapolis, IN, Attorneys for Appellant.

Robert L. Hartley, Henderson, Daily, Withrow & DeVor, Indianapolis, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

The Town of Plainfield ("Plainfield") appeals the trial court's grant of the Town of Avon's ("Avon") Indiana Trial Rule 12(B)(6) motion to dismiss. We affirm.

### Issue

Plainfield raises the following consolidated and restated issue for our review: whether the trial court properly dismissed Plainfield's complaint against Avon pursuant to Trial Rule 12(B)(6).

### Facts and Procedural History [1]

The facts reveal that Plainfield is an Indiana municipal corporation located in Guilford Township, Hendricks County, Indiana. Avon is an Indiana municipal corporation located in Washington Township, Hendricks County, Indiana. Turner Trace is an Indiana limited liability corporation established for the purpose of developing the Village of Turner Trace at Avon (the "Development"). The Development is a residential and commercial complex to be erected along State Road 267 in Avon, Hendricks County, Indiana. The Development, situated in Avon, is two miles north of the corporate boundaries of Plainfield.

The West Central Conservancy District ("WCCD") was established in Avon in 1992 for the purpose of providing sewer service in Hendricks County, Indiana.[2] The WCCD's treatment facilities are located in Avon and several of the conservancy district's sewer lines are currently installed adjacent to the Development. WCCD has the capability to provide sewer service to the Development. In the early part of 2000, Turner Trace contacted the WCCD to inquire about the cost to connect the Development to WCCD's sewer system. Thereafter, WCCD tendered to Turner Trace a summary of fees and construction costs for on-site and off-site sanitary sewers for the Development. Turner Trace's portion of the costs amounted to $526,036.81. This amount did not include a fee of $2,000.00 to be assessed each lot connected to WCCD's sewer system.

On March 31, 2000, Turner Trace filed a petition with the trial court to mandate WCCD to connect the Development to WCCD's sewer system and to assess Turner Trace just, reasonable, and nondiscriminatory connection charges. In response, the WCCD filed with the trial court a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6).[3]

Thereafter, Turner Trace contacted Plainfield regarding the feasibility and estimated cost of connecting the Development to Plainfield's sewer system. Plainfield had several years earlier adopted a resolution to extend its sewer system six miles into the corporate limits of Avon. Because the Development is encompassed

---

1. We note that on October 1, 2001, Plainfield filed with this court a motion for oral argument. We deny this request. Plainfield also filed a motion for expedited consideration of this appeal. In the usual course of business, we have undertaken to decide this appeal within one month of its transmittal from the clerk's office and therefore an order to expedite is unnecessary.

2. Indiana Code section 14–33–1–1 provides in pertinent part that:

(a) A conservancy district may be established for any of the following purposes:
* * *
(5) Providing for the collection, treatment, and disposal of sewage and other liquid wastes.

3. We note that the record lacks any indicia of the disposition of Turner Trace's petition or WCCD's Trial Rule 12(B)(6) motion to dismiss.

by the language of the resolution, Plainfield submitted to Turner Trace a cost estimate to connect the Development to its sewer system. Plainfield's estimated cost totaled $495,450.00. In addition, Plainfield only required a connection fee of $1,000.00 to be assessed each lot. Also, Plainfield's average estimated monthly charge and unmetered monthly charge were significantly less than the WCCD's estimated charges. Consequently, Turner Trace decided it wanted the Development to be connected to Plainfield's sewer system because the municipality's proposed construction costs, connection fee, and monthly charges were less expensive than those proposed by the WCCD.

On August 14, 2000, Turner Trace and Plainfield entered into a contract entitled "Memorandum of Understanding" whereby the two entities agreed that Turner Trace would compensate Plainfield a certain sum in exchange for the municipality connecting its sewer system to the Development. On September 28, 2000, Turner Trace and Plainfield signed a document entitled "Agreement" which reaffirmed, ratified, and amended the "Memorandum of Understanding." The "Agreement" contained the following provision:

> This Memorandum of Understanding is made subject to an Interlocal Cooperation Agreement to be entered into between [Plainfield] and [Avon] that sets forth the terms regarding the provision of the sanitary sewer services by [Plainfield] to the [Development].

Appendix to Appellant's Brief at 32.

Subsequently, Plainfield initiated negotiations with Avon to enter into an interlocal cooperation agreement whereby Avon would permit Plainfield to provide sewer service to the Development. Thereafter, Plainfield prepared an agreement entitled "Avon and Plainfield Interlocal Cooperation Agreement" and submitted it to Avon.

The proposed interlocal cooperation agreement contained the terms under which Plainfield would provide sewer service to the Development. On September 28, 2000, the town council of Plainfield approved, and president of the council signed, the proposed interlocal cooperation agreement. On October 13, 2000, Avon notified Plainfield via mail that its town council had voted not to enter into an interlocal agreement with Plainfield for the provision of sewer service by Plainfield to the Development. Avon did not merely object to the terms or conditions of Plainfield's proposed interlocal cooperation agreement, rather the town council voted against entering into any such agreement with Plainfield.

Consequently, on December 5, 2000, Plainfield filed suit against Avon in the Hendricks Superior Court requesting that the court: (1) resolve any issues between Plainfield and Avon regarding the interlocal cooperation agreement; and (2) require the parties to finalize the interlocal cooperation agreement consistent with the determinations to be made by the court. On January 29, 2001, Avon filed with the trial court an Indiana Trial Rule 12(B)(6) motion to dismiss Plainfield's complaint for failure to state any claim upon which relief could be granted. On June 11, 2001, the trial court heard arguments on Avon's motion to dismiss. On June 27, 2001, the trial court granted Avon's Trial Rule 12(B)(6) motion to dismiss Plainfield's complaint. This appeal ensued.

*Discussion and Decision*

Plainfield argues that the trial court erred in dismissing its complaint against Avon pursuant to Trial Rule 12(B)(6). We disagree.

I.  Standard of Review

In reviewing a motion to dismiss granted pursuant to Indiana Trial Rule

12(B)(6), our standard of review is well settled. A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim, not the facts supporting it. *Borgman v. Aikens,* 681 N.E.2d 213, 216 (Ind.Ct.App.1997), *trans. denied.* Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. *Id.* In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Id.* at 216–17. The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* at 217. Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Mart v. Hess,* 703 N.E.2d 190, 193 (Ind.Ct.App.1998).

## II.   Exercise of Extraterritorial Powers

Plainfield argues that it has concurrent jurisdiction with Avon over the area where the Development resides, and that Avon cannot preclude it from providing sewer service to the Development. Plainfield argues that the grant of exclusive jurisdiction to a municipality over sewers within its corporate boundaries is a mere proviso limited to application between counties and municipalities. Plainfield further argues that it is entitled to a judicial determination of the terms of the proposed interlocal cooperation agreement, and that the trial court may force Avon, against its express wishes, to enter into such agreement with Plainfield whereby Plainfield would connect its sewer system to the Development.

We note initially that when interpreting the meaning of a statute, we are guided by well-established rules of statutory construction. A statute should be construed to ascertain and give effect to the expressed intention of the legislature by giving the words and phrases their common and ordinary meaning. *Rush v. Elkhart County Plan Comm'n,* 698 N.E.2d 1211, 1215 (Ind.Ct.App.1998), *trans. denied.* Where a statute has not previously been construed, the interpretation is controlled by the express language of the statute and the rules of statutory construction. *Chavis v. Patton,* 683 N.E.2d 253, 257 (Ind.Ct.App.1997).

"When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act." *State v. CSX Transp., Inc.,* 673 N.E.2d 517, 519 (Ind.Ct.App.1996). There is a presumption that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* It is only when the language of a statute is ambiguous and unclear that we will engage in statutory construction to determine the intent of the legislature to give effect and validity to each provision thereof. *Id.* A statute is considered ambiguous if it is susceptible to more than one reasonable and intelligible interpretation. *Id.* Because the applicable statutes are clear and unambiguous, we do not need to look beyond the statutes for the legislative intent.

Our analysis begins by looking to Indiana's Home Rule Act.[4] Ind.Code §§ 36–1–3–1 to –9. The Home Rule Act abrogated the traditional rule that local

---

4. The Home Rule Act applies to all "units." Ind.Code § 36–1–3–1. A "unit" is a county, municipality, or township. Ind.Code § 36–1–2–23.

governments possessed only those powers expressly authorized by statute and declared that a local government possesses "[a]ll other powers necessary or desirable in the conduct of its affairs." Ind.Code § 36–1–3–4(b)(2); *see also City of Crown Point v. Lake County*, 510 N.E.2d 684, 685–86 (Ind.1987) (construing the Home Rule Act). A municipality may exercise any power it has to the extent that the power is not expressly denied by the Indiana Constitution or by statute and is not granted to another entity. Ind.Code § 36–1–3–5.

The Indiana General Assembly has vested municipalities with the authority and power to establish, operate, maintain, and regulate sewers, sewage disposal systems, and systems to collect and dispose of waste substances. *See* Ind.Code § 36–9–2–16 to –17. Such general powers typically may be exercised only within the corporate boundaries of the municipality. A municipality has "exclusive jurisdiction" over sewers within its corporate boundaries. Indiana Code section 36–1–3–9 provides in pertinent part that:

(a) The area inside the boundaries of a county comprises its territorial jurisdiction. However, a municipality has exclusive jurisdiction over bridges (subject to IC 8–16–3–1), streets, alleys, sidewalks, watercourses, sewers, drains, and public grounds inside its corporate boundaries, unless a statute provides otherwise.

(b) The area inside the corporate boundaries of a municipality comprises its territorial jurisdiction, except to the extent that a statute expressly authorizes the municipality to exercise a power in areas outside its corporate boundaries.

Indiana statute expressly allows a municipality to exercise the powers granted by Indiana Code sections 36–9–2–16 and 36–9–2–17 in areas four miles outside its corporate boundaries. *See* Ind.Code § 36–9–2–18. Furthermore, Indiana Code section 36–9–23–36 provides that a municipality may exercise jurisdiction to provide sewage works within ten (10) miles outside its corporate boundaries. The power of a municipality to extend its sewer system from its corporate boundaries is generally a discretionary one.

The right of a municipality to exercise its powers extraterritorially is not absolute. The municipality whose corporate boundaries are intruded upon must agree to another municipality's exercise of its powers extraterritorially. Indiana Code section 36–1–7–2 discusses the sharing or delegation of a general power by one municipality to another municipality:

(a) A power that may be exercised by an Indiana political subdivision and by one (1) or more other governmental entities may be exercised:

(1) by one (1) or more entities on behalf of others; or

(2) jointly by the entities.

Entities that want to do this must, by ordinance or resolution, enter into a written agreement under section 3 or 9 of this chapter. . . .

Such written agreement between two municipalities is commonly known as an interlocal cooperation agreement. An interlocal cooperation agreement is a condition precedent to the valid exercise by a municipality of its powers extraterritorially to provide sewer services outside its corporate boundaries. The Indiana General Assembly has provided that:

(c) Whenever a statute authorizes a municipality to exercise a power in areas outside its corporate boundaries, the power may be exercised:

(1) inside the corporate boundaries of another municipality, only if both mu-

nicipalities, by ordinance, enter into an agreement under IC 36–1–7; or

(2) in a county other than the county in which the municipal hall is located, but not inside the corporate boundaries of another municipality, only if both the municipality and the other county, by ordinance, enter into an agreement under IC 36–1–7.

Ind.Code § 36–1–3–9(c)(1) and (2). We believe that such interlocal cooperation agreement must be entered into by each municipality voluntarily, otherwise there would be no reason to place the limiting language of "only if" in Indiana Code section 36–1–3–9(c)(1). Further, the explicit language of this statute indicates that *both* municipalities must enter into the interlocal cooperation agreement; acceptance of the agreement by one of the municipalities is insufficient.

In order to be valid, an interlocal cooperation agreement must contain certain provisions. Indiana statute provides that:

(a) An agreement under this section must provide for the following:

(1) Its duration.

(2) Its purpose.

(3) The manner of financing, staffing, and supplying the joint undertaking and of establishing and maintaining a budget therefor.

(4) The methods that may be employed in accomplishing the partial or complete termination of the agreement and for disposing of property upon partial or complete termination.

(5) Administration through:

(A) a separate legal entity, the nature, organization, composition, and powers of which must be provided; or

(B) a joint board composed of representatives of the entities that are parties to the agreement, and on

which all parties to the agreement must be represented.

(6) The manner of acquiring, holding, and disposing of real and personal property used in the joint undertaking, whenever a joint board is created under subdivision 5(B).

In addition, such an agreement may provide for any other appropriate matters.

(b) A separate legal entity or joint board established by an agreement under this section has only the powers delegated to it by the agreement. The agreement may not provide for members, directors, or trustees of the separate legal entity or joint board to make appointments (either individually or jointly) to fill vacancies on the separate legal entity or joint board.

(c) Subsection (a)(6) does not apply to an emergency management assistance compact under IC 10–4–2.5.

Ind.Code § 36–1–7–3.

■ The legislature contemplated that two municipalities may agree that the exercise of one municipality's powers extraterritorially is appropriate, but disagree over the explicit terms and conditions of a proposed interlocal cooperation agreement. In order to provide expediency to the process and prevent harm to the general public, trial courts were given the authority to hammer out the explicit details of a proposed interlocal cooperation agreement and resolve the conflict and disputes between two municipalities over the structure and provisions of the proposed agreement. Indiana Code 36–1–3–9 provides in pertinent part:

(d) If the two (2) units involved under subsection (c) cannot reach an agreement, either unit may petition the circuit or superior court of the county to hear and determine the matters at issue. The clerk of the court shall issue notice

to the other unit as in other civil actions, and the court shall hold the hearing without a jury. There may be a change of venue from the judge but not from the county. The petitioning unit shall pay the costs of the action.

We agree with Plainfield that it had a right to seek judicial determination pursuant to 36–1–3–9(d) if Avon and Plainfield had reached an impasse over the terms and conditions of the proposed interlocal cooperation agreement. However, the town council of Avon explicitly rejected entering into any interlocal cooperation agreement with Plainfield to permit Plainfield to connect its sewer system to the Development. Here, the interlocal cooperation agreement did not fail because Avon and Plainfield had made an agreement but were dickering over the terms and conditions of the proposed agreement. Rather, the town council of Avon had voted against the notion of Plainfield exercising its powers extraterritorially within Avon's corporate boundaries.

We do not believe that Indiana Code section 36–1–3–9(d) grants a trial court the authority to compel a municipality to enter into an interlocal cooperation agreement with a neighboring municipality against its express wishes. To do so otherwise would effectively impinge on the territorial jurisdiction of the municipality and render corporate boundaries meaningless. Here, Avon's compulsion to enter into the proposed interlocal cooperation agreement would violate Avon's broad territorial jurisdiction and force Avon to relinquish its exclusive jurisdiction over the sewers within its corporate boundaries, all of which is contrary to Indiana Code section 36–1–3–9(a) and (b).

Although Indiana statute permits a municipality to exercise its powers to provide sewer service extraterritorially, it may do so only with the consent and agreement of the municipality whose territorial jurisdiction has been impinged or where there is not a municipality or other unit to provide sewer service. Plainfield and Avon do not have concurrent territorial jurisdiction over the area upon which the Development resides. Avon has primary territorial jurisdiction over the subject area and "exclusive jurisdiction" over sewers within its corporate boundaries. Plainfield's right to provide sewer service to the Development is contingent on Avon's acquiescence to Plainfield's exercise of its powers extraterritorially.

Accordingly, we hold that the trial court properly dismissed Plainfield's complaint against Avon pursuant to Indiana Trial Rule 12(B)(6).

### Conclusion

Based on the foregoing, we hold that the trial court properly dismissed Plainfield's complaint against Avon pursuant to Indiana Trial Rule 12(B)(6).

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.