**Timothy Dean PARKS, Appellant–Plaintiff,**

v.

**STATE of Indiana, Madison County, City of Anderson, et al., Appellees–Defendants.**

No. 77A01–0207–CV–266.

Court of Appeals of Indiana.

May 29, 2003.

---

Timothy Parks, Carlisle, IN, Appellant pro se.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, John T. Roy, St. Paul Staff Counsel Office, Indianapolis, IN, William C. Kreegar, Donald B. Kite, Sr., Schultz & Pogue, Carmel, Charles F. Braddock, Edward A. Sorg, The Law Office of Charles F. Braddock, LLC, Anderson, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

In an action too obtuse to be summarized here in one or two sentences, veteran pro se litigant Timothy Parks appeals a

ruling dismissing his claim against multiple defendants, presenting the following restated issues for review:

1. Did the trial court err in denying Parks's request for pauper counsel?

2. Did the trial court err in denying Parks permission to proceed on the amended complaint?

3. Did the trial court err in dismissing Parks's case as frivolous?

4. Did the trial court err in denying Parks's motion for partial summary judgment?

We affirm.

The facts are that on December 20, 1989, Parks was placed on probation after having been convicted of burglary in Madison County, Indiana. On November 24, 1993, a warrant was issued for Parks's arrest alleging that he had violated probation. The warrant was served on Parks on March 20, 1995 while he was living in Florida. It was subsequently determined that Parks had violated the conditions of probation, and therefore his probation was revoked. That rather simple beginning became the fountainhead for a torrent of litigation initiated by Parks that has continued unabated, notwithstanding a total lack of success and even in the face of sanctions. *See Parks v. Madison County,* 783 N.E.2d 711 (Ind.Ct.App.2002) (affirming Parks's loss of good time credit upon the trial court's finding that Parks had initiated frivolous, unreasonable, and groundless litigation) (*Parks III*). We believe that a review of the history of that litigation would serve to place our discussion in the proper factual context. We summarized that history in *Parks III* as follows:

This court affirmed the revocation of Parks's probation in an unpublished memorandum decision. *See Parks v. State,* No. 48A04–9508–CR–293 [657 N.E.2d 207] (Ind.Ct.App. Nov.20, 1995).

Thereafter, Parks filed an action in federal court alleging 42 U.S.C. § 1983 violations. That action was based upon the same operative facts as the previous Indiana action. In it, Parks sought an order expunging the determination that he violated probation, as well as compensatory and punitive damages. Some of the claims asserted by Parks were resolved against him by way of summary judgment. The remaining claims were dismissed without prejudice when Parks "refused to remedy, despite specific guidance and direction from the court on how to" conform his complaint to the guidelines set out in the federal pleading rules. *Appellant's Appendix* at 96 (quoting *Parks v. Lawler, Jr., et al.,* No. IP–95–1231–C (S.D.Ind. Oct. 1, 1997) (*Parks I*)). Still later, Parks filed another action in Sullivan Circuit Court, which was removed to the United States District Court for the Southern District of Indiana. *See Parks v. Madison County, et al.,* No. 00–0031–C–D/F (Ind.Ct.App. Sept. 28, 2000) (*Parks II*). According to the *Parks II* court, that action, which also advanced a 42 U.S.C. § 1983 claim, was "a mere shadow" of *Parks I.* In granting summary judgment for the defendants, the court held:

The foregoing demonstrates that Parks' claims accrued no later than upon the March 1995 Madison Circuit Court's order revoking his probation. He had two (2) years following such date in which to file suit pursuant to 42 U.S.C. § 1983. He did not do so.... *Parks I* was deficient with respect to certain claims and was botched by Parks' unwillingness to follow repeated instructions to plead his claims in a simple and proper fashion. This sequel offers nothing of substance, nothing of merit, which could support Parks' recovery. In a ruling on a summary judgment motion the court accepts

as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence of the credibility of witnesses. However, "it is gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.1983). *Appellant's Appendix* at 100–01 (quoting *Parks v. Madison County, et al.*, No. 00–0031–C–D/F, slip op. at 7–8). *Parks v. Madison County*, 783 N.E.2d at 716–17. This case is not as simple as a complaint and an answer, however. Parks's endeavors as a pro se litigant have been marked by complications and failures attributable at least in part to a lack of legal training. This case is no different.

Parks initiated the instant action on April 14, 2001 by filing a fourteen-page complaint in the Sullivan Circuit Court, naming as defendants three political subdivisions, one newspaper, and twenty-four individuals. On June 15, 2001, after Parks paid the $1.20 filing fee, the trial court issued an order directing the clerk of the Sullivan Circuit Court to serve the summons and complaint upon the named defendants. Of the individuals named in the complaint, six are judges, three are court employees, twelve are attorneys (two of whom are prosecutors, and the remaining ten are attorneys who represented adverse parties in previous actions filed by Parks), and three are law enforcement officials. By our count, Parks referenced in the complaint sixteen previous lawsuits he had initiated involving essentially the same subject matter and the same defendants. In the original complaint, Parks alleged that all of the defendants conspired to deny him access to state and federal courts.

The counts in his original complaint may be divided roughly into two categories. In the first, Parks alleged that certain defendants denied him access to legal research materials. As a result, according to Parks, he "had numerous actions dismissed and [he] was unable to amend flawed actions properly, or appeal dismissals of cases, timely, because of the lack of legal materials he requested for preparing his actions and appeals." *Appellant's Appendix* at 20. Further, according to Parks, "some of those dismissed cases have subsequently been relied upon as 'strikes' under 28 U.S.C. § 1915(g), or *res judicata* bars to numerous appeals and civil actions in federal, or state courts[.]" *Id.* at 21. As a result, again according to Parks, he was "barred access to all federal courts in the Seventh Circuit until he can pay a $100.00 filing fee due in [one of Parks's federal cases], per court's order on December 9, 1997[.]" *Id.*

The second category concerns allegations that certain defendants in civil rights actions filed by Parks in state court removed those actions to federal court. There, as set out above, Parks's actions were dismissed because he has not paid the $100.00 filing fee. According to Parks, such amounts to "[c]ivil conspiracy to deny Parks access to state court litigation of civil rights claims." *Id.* at 24. We come now to one of the "complications" alluded to previously in this opinion.

In July 16, 2001, Parks filed a motion for partial summary judgment. At the same time, he filed a motion for change of venue from judge and county. Four days later, before any of the named defendants had filed a response, Parks filed an amended complaint for the purpose of adding additional defendants and claims. On September 7, 2001, Judges Thomas Newman, Dennis Carroll, Thomas Clem, David Hop-

per, Thomas Johnson and Anne K. Smith, Rodney Cummings and David Puckett (prosecutor and deputy prosecutor, respectively, for Madison County), and Wayne Uhl (who represented certain governmental defendants in previous actions filed by Parks) (collectively referred to as "the State") filed a motion to dismiss. In late January 2002, Parks filed an "Application for Appointment of Attorney to Prosecute Civil Action as an Indigent Plaintiff." On June 19, 2002, the court entered an order denying "all current motions" submitted by Parks, including his motion for partial summary judgment. The court also granted the defendants' motions to dismiss with prejudice.

### 1.

█ The trial court found that Parks was indigent, but denied his request for appointment of counsel. Parks contends the court erred in denying that request. We addressed this same claim of error in *Parks III* and will summarize that discussion here.

The version of Ind.Code Ann. § 34–10–1–2 in effect at the time Parks filed his motion for appointment of counsel provided that, if it finds that a person who filed an application to proceed as an indigent did not have sufficient means to prosecute or defend the action, the court shall: "(1) admit the applicant to prosecute or defend as an indigent person; and (2) assign an attorney to defend or prosecute the cause." This language appeared to mandate appointment of counsel upon a finding of indigence. In *Sholes v. Sholes*, 760 N.E.2d 156 (Ind.2001), however, our supreme court indicated that the appointment of counsel was not automatic upon a finding of indigence. After finding the defendant to be indigent, the trial court must further determine whether the defendant "has a colorable bona fide dispute over issues warranting the expense of counsel." *Id.* at

166. The court explained: "Although most lawsuits represent genuine disputes, some litigants present wholly frivolous cases. Others pursue cases where the amount of money or principles of law are insignificant. Courts are occasionally presented with vendettas and simple sporting exercises. Public funding of counsel in those cases is a waste of public funds." *Id.* at 166.

As alluded to above, and as will be explained more fully below, Parks's claims are little more than rehash of claims pressed in numerous previous lawsuits, none of which were found to have any merit. As we stated in *Parks III*, "[a]n appointment of counsel to represent Parks in [these] matters would have been, in the words of our supreme court, 'a waste of public funds.'" *Parks v. Madison County*, 783 N.E.2d at 727 (quoting *Sholes v. Sholes*, 760 N.E.2d at 166). The trial court did not err in declining to appoint counsel to represent Parks in this endeavor.

### 2.

After he filed the original complaint, but before any of the defendants had filed a response thereto, Parks filed an amended complaint. It appears, however, that he neglected to serve the defendants with the amended complaint. After the defendants filed responses to the original complaint, Parks asked the court to serve the amended complaint on the defendants. Approximately eleven months after Parks filed the amended complaint, the trial court denied his request to serve it on the defendants. Parks contends that the trial court erred in so ruling.

The relevant portion of Rule 15(A) of the Indiana Rules of Trial Procedure provides that a party may amend a pleading once as a matter of right before a responsive pleading is served. After that, a party may amend a pleading "only by leave of court or by written consent of the adverse

party[.]" T.R. 15(A). The rule grants discretion to the trial court in deciding whether to grant a discretionary amendment, with the only guideline being that amendments should be granted "when justice so requires." *Id.* Our courts are to be liberal in permitting amendments to pleadings to insure that all issues involved in a lawsuit are presented to the jury. *Kuehl v. Hoyle*, 746 N.E.2d 104 (Ind.Ct.App. 2001). Nevertheless, trial courts are accorded broad discretion in determining whether to grant or deny amendments to the pleadings. *Id.* We will reverse only upon a showing of abuse of discretion, which occurs where an erroneous conclusion and judgment are clearly against the logic and effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom. *Id.* Stated even more clearly, we generally will affirm a decision concerning a discretionary motion to amend if there is any rational basis for the decision. *Strodtman v. Integrity Builders, Inc.*, 668 N.E.2d 279 (Ind.Ct.App.1996), *trans. denied.* Finally, and of particular relevance here, "[i]t is not an abuse of discretion to deny a motion to amend a pleading where such an amendment would be futile." *Id.* at 284. The additional claims for relief contained in the amended complaint had no chance of success and therefore were futile.

The amended complaint differs from the first in that the amended complaint names additional defendants and identifies additional theories of liability. Added in the amended complaint were Indiana Attorney General Steven Carter, Indiana Department of Corrections Commissioner Evelyn Ridley–Turner, Madison County Jail Supervisor Doris Maxey, Wabash Valley Cor-

rectional Facility Superintendent Craig Hanks, and Robert Stoops, who served in some capacity at the Madison County Jail. The complained-of acts upon which those additional allegations rested primarily ranged from the denial of access to legal research materials to the defendants invoking the provisions of Ind.Code Ann. § 35–50–6–5(a)(4)[1] (West, PREMISE through 2002 1st Special Sess.) as a sanction against Parks's litigiousness. In one way or another, both types of claims new to the amended complaint have already been resolved against Parks in previous installments of this seemingly never-ending series of closely related lawsuits. With no chance of prevailing, Parks's pursuit of those claims would have been an exercise in futility. The trial court did not err in refusing to order that the amended complaint be served upon the named defendants.

### 3.

Parks contends that the trial court erred in granting the defendants' motions to dismiss.

Four separate motions to dismiss were filed on behalf of the various defendants in this action. Through those motions, the defendants sought dismissal of Parks's complaint pursuant to Rule 12(B) of the Indiana Rules of Trial Procedure. None of the motions to dismiss identified the specific subsection of T.R. 12(B) upon which that particular motion was premised. A review of the motions reveals that dismissal was sought on the following grounds: (1) general immunity of opposing counsel, (2) immunity of successful party opponent for actions undertaken in litigating prior lawsuit (3) governmental attorney immunity, (4) no right of action for

---

1. That provision states, "A person may, with respect to the same transaction, be deprived of any part of the credit time he has earned for any of the following: ... (4) If a court determines that a civil claim brought by the person in a state or an administrative court is frivolous, unreasonable, or groundless."

damages under the Indiana Constitution, (5) general governmental immunity, and (6) the general allegation that the complaint fails to state a cause of action against the defendants. The trial court granted the motions to dismiss without specifying the grounds for that ruling. Although not explicitly stated, it appears that the motions to dismiss were submitted and granted on T.R. 12(B)(6) grounds.

 When reviewing the granting of a motion to dismiss under T.R. 12(B)(6), we apply a well-settled standard of review. A motion to dismiss based upon T.R. 12(B)(6) tests the legal sufficiency of a claim, not the facts supporting it. *Town of Plainfield v. Town of Avon*, 757 N.E.2d 705 (Ind.Ct.App.2001), *trans. denied.* Accordingly, we view the complaint in a light most favorable to the nonmoving party and draw every reasonable inference in favor of that party. *Id.* Standing in the shoes of the trial court, we must determine if the trial court erred in applying the law. *Id.* The grant of a motion to dismiss is proper if it is clear that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. Moreover, in making this determination, we consider only the complaint and not any other evidence in the record. *Id.*

Parks's first argument concerning the granting of the various motions to dismiss centers not upon the merits of the defendants' respective arguments, but rather upon a technicality. Parks notes, "Only the State defendants filed a motion under Rule 12(B), prior to filing a responsive pleading." *Appellant's Brief* at 26. Parks contends that all but the latter motions to dismiss were untimely because T.R. 12(B) requires that motions to dismiss on that basis *"shall be made before pleading." Id.*

(emphasis in original). T.R. 12(B)(6), however, provides, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Although not styled as a request for judgment on the pleadings, the motions to dismiss filed by all but the State defendants were the functional equivalent of motions for judgment on the pleadings. Pursuant to T.R. 12(C), they were timely filed.[2]

We turn now to the merits of the rulings on the motions to dismiss. The State defendants sought dismissal of Parks's complaint on the basis of governmental immunity. We will not undertake a detailed analysis here concerning why those defendants are immune from personal liability for their actions. Similar previous analyses have apparently failed to enlighten Parks on that subject. *See, e.g., Parks v. Madison County,* 783 N.E.2d 711; *Parks v. Madison County, et al.,* No. 00–0031–C–D/F (S.D.Ind. Sept. 28, 2000) (*Parks II*). We cannot state it more plainly than it was stated in those two opinions. Referring Parks to the discussions of immunity in *Parks II* and *Parks III,* we summarily affirm the granting of the State defendants' motion to dismiss.

██ Defendants Kite and Morrow were described in Parks's complaint as

> attorneys who have been employed by the state, county, city, or private, party defendants in Parks' prior lawsuits, or who were previously sued by Parks, who are being sued for money damages and injunctive relief for harm done to Parks by their personal acts, or acts of their legal representatives, that denied Parks the exercise of his state constitutional rights.

**2.** We note also that pursuant to T.R. 12(H)(2), a motion to dismiss for failure to state a claim entered even after the presentation of evidence in support of the defendant's case-in-chief is not untimely. *See Matter of Carroll's Estate,* 436 N.E.2d 864 (Ind.Ct.App.1982).

*Appellant's Appendix* at 19. Kite argued in his motion to dismiss that the rule in Indiana is that a party cannot mount a collateral attack upon a party opponent who prevailed in a prior civil suit by filing a subsequent, separate civil suit alleging malfeasance in the first action. Kite is correct. As our supreme court noted long ago, "[t]o permit the maintenance of such action would sanction a collateral attack upon judgments in other causes." *Hermon v. Jobes,* 209 Ind. 196, 198 N.E. 316, 317 (1935). The court illustrated this principle by citing *Shultz v. Shultz et al.,* 136 Ind. 323, 36 N.E. 126, (1894).

> [In that case,] a conspiracy was alleged which resulted in wrongfully obtaining property through illegal proceedings. It was there held that an action for damages for fraudulently obtaining a judgment cannot be maintained by a party thereto so long as such judgment stands, because a judgment for damages would operate as an impeachment of the first judgment. The first judgment imports absolute verity as to every proposition of law and fact essential to its existence against all the parties to it; as long as the original judgment stands, 'it imports that it was just, equitable, lawful, and right to set aside appellant's deed, and subject the property to sale to pay the debts of her husband with absolute verity. That being true, for the purposes of this case it makes no difference how wicked the conspiracy was that is charged against all the parties to bring about that result.' The first judgment should have been set aside in a direct action for ... that purpose, if it had been procured by fraud. It was held that before a complaint can be sufficient, it should show a state of facts presenting the plaintiff's inability to set aside the original judgment by some appropriate proceedings known to law; that if fraud was perpetrated upon her (the appellant

therein) she can only relieve herself of that fraud in a direct proceeding to vacate the judgment.

*Hermon v. Jobes,* 198 N.E. at 317–18.

Parks seeks redress against Kite and Morrow for their actions in lawsuits in which their client prevailed over Parks. The relevance of the *Hermon* holding is obvious. Moreover, Parks's recent legal endeavors have rendered the supreme court in that case positively prescient concerning the specter of a system without that rule: if such an action could be maintained and the matter culminated "in an adverse ... judgment, [the appellant] would have been in a position to maintain another action based upon what he may have considered false testimony, which contributed to his loss. *There would be no end to the litigation.*" *Hermon v. Jobes,* 198 N.E. at 319 (emphasis supplied). It appears, in this case anyway, there would not. The trial court did not err in granting Kite's and Morrow's motions to dismiss.

The motion to dismiss submitted by the City of Anderson, Ed Leonard, Timothy Lanane, Robert Rock, and Thomas Broderick (the City defendants) incorporated by reference the motion to dismiss submitted by the State defendants. Again, we see no benefit in broaching this subject again when it has already been ably discussed in prior opinions. We refer Parks to those opinions, and summarily affirm the granting of the motion to dismiss submitted by the City defendants.

### 4.

Parks contends the trial court erred in denying his motion for partial summary judgment. Parks advances two arguments in support of his contention that the trial court erred in denying the motion for partial summary judgment, one procedural and the other on the merits.

We review the grant or denial of a motion for partial summary judgment using

the same standard employed by the trial court. Summary judgment is appropriate only where the evidence reveals there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157 (Ind.2002). When conducting our review, we construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. *Id.*

■ Parks's procedural argument is that the defendants did not timely file responses and designate materials in opposition to his motion for partial summary judgment. We infer from this that Parks believes an unopposed summary judgment motion must be granted. That is not the case. Even accepting for the sake of argument, but by no means agreeing, that Parks's motion was unopposed, the Indiana Rules of Trial Procedure do not support Parks's argument. Trial Rule 56(C) provides that summary judgment is appropriate only when, "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In other words, summary judgment is awarded on the merits of the motion, not on technicalities. This principle is emphasized elsewhere in subsection (C), where it states, "[s]ummary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits of evidence, but the court shall make its determination from the evidentiary matter designated to the court." Parks was not entitled to partial summary judgment on procedural grounds.

■ The basis of Parks's request for partial summary judgment on the merits can best be understood by considering the language of the motion itself, which states:

This case raises claims concerning defendants' concerted efforts to deny Parks of meaningful access to state court litigations [sic] of his civil rights claims, via civil conspiracy, or otherwise, that resulted in damages where Parks is not time-barred from pursuing a ruling on the merits of some civil rights claims, and is denied award of damages for those claims, since cases removed from state court to deferral court in 1998–2000 were dismissed over November–December 2000. Parks seeks summary judgment issued by the Court in Parks' favor against all defendants finding that all defendants agreed to remove Parks' civil rights claims from state court to federal court, over 1998–2000, after having reason to know Parks was barred from proceeding in federal courts of the Seventh Circuit, and that Parks has suffered harm as the result of defendants' intentional acts in agreement, where he is now time-barred from suing for some claims for damages in state court, and such damages became ascertainable only since the federal actions were dismissed in November–December, 2000, and that Parks was unable to pay the filing fee he owes in case no. 91–8101 in time to prevent dismissal of his actions, due to his lack of access to sufficient funds to do so, and he is entitle to damages to compensate for his losses.

*Id.* at 32–33. In essence, Parks complained that the defendants conspired to remove his civil rights lawsuits from state to federal court. Parks does not favor us with any argument supporting the proposition that removing cases from state to federal court is a forbidden tactic or an actionable tort. The question of whether a particular case may be removed to federal court is resolved by resorting to the jurisdictional provisions in the Federal Rules of Civil Procedure (the Rules). If a case cannot be removed consistent with those

provisions then, of course, courts will not permit it. If the Rules do permit removal, then the case may be removed. In the latter case, courts do not inquire into the motives of the party seeking removal. It makes no difference whether removal is sought for strategic reasons, for the sake of convenience, out of personal preference, for any other reason, or for no particular reason at all; if the Rules permit removal, the case may be removed. We need not point out the absurdity of a rule forbidding removal to federal court when the movant does so for strategic reasons. The trial court did not err in denying Parks's motion for partial summary judgment.

We have once again resolved all issues against Parks and thereby affirmed the trial court in all respects. This would normally end the matter. This is not a normal circumstance, however. We have previously observed, "when a decision is rendered against Parks, he has a penchant for dressing old arguments in new clothes, and then pressing them forward again. In the end, the inevitable decisions subsequently entered against him are rendered on the same or substantially similar grounds as were previous decisions." *Parks v. Madison County*, 783 N.E.2d at 722–23. This case is but the latest manifestation of that pattern. Whether this is classified as the third or the seventeenth bite of the proverbial apple, it is apparent to us that Parks refuses to accept that he will not prevail over these or other defendants in a lawsuit based upon the 1993 warrant and the 1995 arrest. Meanwhile, these defendants are forced to endure endless rounds of meritless litigation, and our valuable judicial resources are spent answering the same questions over and over again. We cannot permit this cycle to continue ad infinitum.

We note that in his motion to dismiss, Morow asked the court to implement certain enumerated measures to prevent Parks from filing further lawsuits concerning these matters. We do not find any place in the appellate materials where the trial court addressed that request. Although the appellees do not request it here, we conclude that Parks's propensity toward endless litigation warrants the unusual step of establishing a screening mechanism to forestall future frivolous lawsuits. We note that the federal system contains persuasive precedent for such measures.

Years ago, Congress enacted the Prison Litigation Reform Act (the Act). *See* 28 U.S.C. § 1915, *et seq.* Its purpose was to prevent frivolous lawsuits, or to "discourage prisoners from filing claims that are unlikely to succeed." *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1596, 140 L.Ed.2d 759 (1998). In that legislation, Congress enacted the following screening provisions:

> **(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>>
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A (West Supp.2003). These provisions have consistently withstood constitutional scrutiny. *See, e.g., Singleton v. Smith*, 241 F.3d 534 (6th Cir. 2001). We understand, of course, that the Act applies only in federal actions, and its provisions do not govern here. We find its provisions instructive, however, as we at-

tempt to remedy the problems engendered by Parks's interminable string of lawsuits.

Accordingly, in addition to affirming the dismissal of Park's lawsuit, we impose the following conditions upon Parks with respect to any future lawsuits that spring directly or indirectly from the 1993 arrest warrant and the execution of that warrant in 1995.(1) Prior to filing any such lawsuit, Parks shall submit to the trial court a copy of the complaint he wishes to file. (2) Parks shall also file a copy of all of the relevant documents pertaining to the ultimate disposition of each and every previous case instituted by Parks against any of the same defendants *or* emanating, directly or indirectly, from the 1993 arrest warrant and the execution of the warrant in 1995. This includes, but is not limited to, the complaint, any motions to dismiss or motions for summary judgment filed by the defendants in those actions, the trial court order announcing disposition of the case, and any opinions issued in the case by any appellate court. (3) Parks shall file a legal brief, complete with competent legal argument and citation to authority, explaining to the court why the new action is not subject to dismissal by application of the doctrines of res judicata or law of the case. If, after reviewing these materials, the trial court determines that the proposed lawsuit is frivolous, malicious, fails to state a claim upon which relief may be granted, or is otherwise utterly without merit, the court shall dismiss the proposed complaint. (4) Parks is specifically instructed to attach to such complaint a separate copy of the final paragraph of this opinion.

Judgment affirmed.

BROOK, C.J., and MATTINGLY–MAY, J., concur.